UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                            Case No. 3:20-cr-606

            Plaintiff,

v.                                          MEMORANDUM OPINION
                                                    AND ORDER

Jonathan Garcia,

            Defendant.

## I.    INTRODUCTION

Defendant Jonathan Garcia seeks to suppress evidence seized during the execution of a search warrant at his residence. (Doc. No. 13). The government filed a brief in opposition to his motion. (Doc. No. 14). For the reasons stated below, I deny Garcia's motion.

## II.    BACKGROUND

On August 16, 2020, officers with the Toledo Police Department received an alert of gunfire in the 300 block of Boston Place from the ShotSpotter alert system. When the officers arrived in the area, a neighbor told the officers the neighbor saw "a younger Hispanic male, wearing tan pants and a tan shirt, fire a pistol behind 326 Boston Place[,] . . . pick up the shell casings[,] and run into the rear door of the residence, 326 Boston Place." (Doc. No. 13-1 at 3). At 326 Boston Place, the officers observed a younger Hispanic male, subsequently identified as Garcia, "wearing tan pants and putting on a blue shirt while attempting to exit the residence." (*Id.*). Garcia declined to consent

to a search of the property or of any recordings from the surveillance video cameras mounted outside of the house. (*Id.*).

The following day, a detective returned to the 300 block of Boston Place and spoke with the same neighbor; the neighbor is not identified in the search warrant affidavit. (*See id.*). The neighbor stated the neighbor "saw a young Hispanic male firing a gun behind a silver vehicle in the backyard of 326 Boston Place . . . [while] wearing tan pants and a tan shirt." (*Id.*). The male "picked up the shell casings after firing the gun and then ran into the rear of the residence." (*Id.*).

The detective represented that the cameras outside of 326 Boston Place likely captured the gunfire on August 16, including the identity of the shooter. (*Id.*). Further, the detective determined Garcia previously had been convicted of a felony and was not able to legally possess a firearm. (*Id.*).

Lucas County Common Pleas Judge Joseph McNamara authorized a search warrant. (*Id.* at 1). During the subsequent search of the residence, officers located a handgun and a shotgun. Garcia subsequently was charged by indictment with one count of illegally possessing a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. No. 3).

Garcia seeks to suppress the evidence obtained from his residence pursuant to the search warrant. He argues the officers were not entitled to rely on the ShotSpotter alert or the anonymous neighbor's statements because, he asserts, the officers did not verify the ShotSpotter alerts through investigation and "ShotSpotter's reliability has been repeatedly questioned." (Doc. No. 13 at 5-6). Further, he contends the officers could not know if the neighbor was truthful or if the person was merely "[a]n angry neighbor." (*Id.* at 5).

### III.    ANALYSIS

The Fourth Amendment generally requires law enforcement officers to obtain a warrant, based upon probable cause, before searching a location in which an individual has a reasonable expectation of privacy. *See, e.g., Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) ("When an

2

individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause.") (further citation omitted). Probable cause is the "reasonable grounds for belief" that evidence of a crime may be found in a certain place or location. *United Stated v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Garcia requested an evidentiary hearing regarding his motion to suppress. (Doc. No. 13 at 2). A defendant is entitled to an evidentiary hearing on a motion to suppress "only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)). A hearing is not required if there are no "issues of fact material to the resolution of the defendant's constitutional claim." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). I conclude a hearing is not necessary, as his motion only involves the contents of the search warrant affidavit.

I also conclude the search warrant affidavit contains sufficient facts to establish probable cause to search Garcia's residence. While Garcia may be correct that either the ShotSpotter alert or the neighbor's report, standing alone, might only establish "a speculative connection between the gunfire report and the residence," (Doc. No. 13 at 6), the officers did not attempt to obtain a search warrant based only on that limited evidentiary basis.

The search warrant affidavit describes the officers' efforts to connect and corroborate the evidence they received. Officers did not seek to conduct a search or to obtain a warrant based upon

3

the ShotSpotter alert. That alert led them to the 300 block of Boston Place, where the officers spoke with a neighbor who provided a description of an individual firing a gun, picking up the shell casings, and running inside of the house of 326 Boston. The officers then spoke with a person who was inside 326 Boston Place and who matched the witness's description. This effort seems to satisfy Garcia's argument that ShotSpotter alerts "need to be corroborated with other evidentiary sources such as . . . witness statements." (Doc. No. 13 at 6).[1]

Moreover, officers did not rely solely on the events of August 16 in seeking a search warrant. The detective returned to the scene the following day and spoke with the same neighbor. While the neighbor remained unidentified in the search warrant affidavit, the neighbor provided the same information to the detective. The detective thus had an independent opportunity to speak with and observe the witness.

When viewing the contents of the search warrant affidavit based upon the totality of the circumstances, I conclude the affidavit evinces sufficient corroboration of the initial report of gunfire to establish probable cause to search Garcia's residence. *See United States v. Jackson*, 470 F.3d 299, 306-08 (6th Cir. 2006).

### IV. CONCLUSION

For the reasons set forth above, I deny Garcia's request for a hearing and his motion to suppress. (Doc. No. 13).

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge

---

[1] Garcia also contends the alerts must be corroborated with "recovered shell casings." (Doc. No. 13 at 6). Garcia does not identify a case in which a court has imposed such a requirement. Nor does he explain how a rule of that sort would be manageable, as that rule would categorically prohibit a probable cause finding in circumstances in which an individual fired a revolver, to say nothing of circumstances such as those in this case, in which an individual is alleged to have picked up shell casings after firing a gun.